***********
Upon review of the parties' briefs and the record of the proceeding before Deputy Commissioner Hall, and after hearing arguments of counsel, the Full Commission has determined that this case should be REMANDED for additional medical evidence, and if necessary an evidentiary hearing in order to allow the parties to introduce additional medical testimony.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. At all times relevant to this claim, including November 13, 2000, an employer and employee relationship existed between plaintiff and defendants.
3. The Travelers Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage will be determined by the Form 22.
5. The following issues are before the Commission:
 (a) Whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendants on November 13, 2000?
 (b) If so, to what benefits is plaintiff entitled to receive pursuant to the provisions of the North Carolina Workers' Compensation Act?
 (c) Did plaintiff fail to comply with the reporting provisions of N.C. Gen. Stat. § 97-22 and were defendants prejudiced by plaintiff's failure to give notice of his injury on November 13, 2000 in a timely fashion?
 (d) Whether plaintiff is entitled to attorney's fees pursuant to the provisions of N.C. Gen. Stat. § 97-88.1?
 (e) Whether defendants are entitled to attorney's fees pursuant to the provisions of N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff was a 25 year old high school graduate at the time of the hearing before the Deputy Commissioner and was employed as an HVAC mechanic for defendants from December 1, 1999 through November 13, 2000. Plaintiff had approximately five years of work experience in the HVAC industry.
2. Plaintiff testified that 85 percent of his work was done under houses and he was only occasionally required to work with his hands above his head. Plaintiff testified that most of the time under houses, he would be lying on his back with his hands extended out in front of him to perform his work.
3. Plaintiff's medical history included a dislocated shoulder on August 30, 2000. That injury occurred when plaintiff grabbed out in an attempt to restrain his dog that had escaped its leash. Plaintiff sought emergency medical treatment, was advised by the treating physician that the injury was a common one, performed exercises with some rubber bands, and resumed his regular job duties two days later. Thereafter, plaintiff did not experience additional shoulder problems until the injury that is the subject of this claim.
4. On the morning of November 13, 2000, plaintiff was working in an older office building, standing near the top of an eight-foot tall stepladder. Plaintiff attempted to remove a vent cover from a wall. He removed the two screws from the vent cover and reached above his head to remove the cover. Plaintiff testified that the cover did not come off and he had to "snatch" the cover one to two times. The vent cover did not come off the wall and in the course of trying to remove it, plaintiff's left shoulder popped out of joint.
5. Plaintiff testified that he was in pain and sat on the floor 10 or 15 minutes to gather himself before he descended the stairs of the building and informed some of defendants' workers that he had dislocated his shoulder.
6. The foreman on the job, Carson T. Wilson, was present at the worksite and was made aware of plaintiff's injury after it occurred. Plaintiff testified that other coworkers present at the scene, Robert Richardson and Jeremy Evans, assisted him to his truck. Mr. Wilson and Mr. Evans did not testify at the hearing before the Deputy Commissioner. Mr. Richardson testified he was working with plaintiff on the jobsite where the injury occurred, but he could not recall any other details about the day plaintiff was injured.
7. Plaintiff drove to his house to pick up his fiancée and proceeded to Nash General Hospital emergency room. Plaintiff was in a lot of pain during the drive to the hospital, but did tell his fiancée about dislocating his shoulder while attempting to remove a vent cover at work.
8. Plaintiff's wife, his fiancée on the date of injury, testified at the hearing before the Deputy Commissioner that plaintiff left for work on the morning of November 13, 2000 and that he was not experiencing any shoulder problems before going to work. She was unaware of anything he had done at home to injure the shoulder, and that he returned home unexpectedly from work with a dislocated shoulder and appeared to be in extreme pain. She drove him to the hospital.
9. Upon his arrival at Nash General Hospital, plaintiff was quickly administered medication to calm him down and relieve his pain. The medication had a sedating effect and plaintiff's fiancée provided the hospital with intake information.
10. On the evening of November 13, 2000, plaintiff's fiancée telephoned plaintiff's supervisor, Shawn Mattern, to report that plaintiff had been injured at work earlier that day. At the time, plaintiff was heavily medicated and was sleeping.
11. On the morning of November 14, 2000, plaintiff followed up with a second telephone call to Mr. Mattern to personally report the work related injury. Mr. Mattern did not testify at the hearing before the Deputy Commissioner.
12. Nash County Hospital told plaintiff to seek follow up treatment with an orthopaedist. He began treating with Dr. Shepherd Rosenblum, of the Boice-Willis Clinic, on November 20, 2000. Dr. Rosenblum noted that plaintiff appeared to be in pain and stated the need to stabilize the shoulder. On February 1, 2001, Dr. Rosenblum performed a left shoulder arthroscopy with labral repair using three anchors and a capsular shift.
13. After surgery, plaintiff experienced temporary improvement of his shoulder complaints and Dr. Rosenblum released him to return to work on June 11, 2001.
14. Plaintiff made a good faith effort to return to work for defendants upon his release by Dr. Rosenblum, however, defendants did not provide him with work. Subsequently, and without advising plaintiff, defendants terminated plaintiff's employment when they laid off about half of their employees due to lack of work.
15. In October 2001, plaintiff returned to work for a cabinet installation company. Plaintiff only worked for four weeks and was paid $10.00 per hour for a forty hour work week.
16. Prior to his temporary return to work for a different employer in September 2001, plaintiff began to experience increasing shoulder pain, frequent popping and severe functional limitations. An MRI of the left shoulder was obtained on November 5, 2001, which revealed severe degenerative changes, fluid in the subacromial space, marrow edema, and pitting of the articular surface. X-rays of the shoulder demonstrated complete loss of articular cartilage and erosion of the bone by the anchors used in the earlier labral repair.
17. On December 19, 2001, Dr. Rosenblum performed left shoulder arthroscopy with debridement and evaluation. The purpose of surgery was not to improve plaintiff's functioning, but to provide him with pain relief. After surgery, Dr. Rosenblum diagnosed plaintiff with post-operative chondrolysis, restricted him from lifting in excess of five pounds, pushing or pulling heavy objects, or performing overhead work with the left arm, recommended either a shoulder fusion or complete shoulder replacement, and referred him to Dr. Carl Basamania.
18. On March 4, 2002, Dr. Carl Basamania of Duke University Medical Center performed a total replacement of plaintiff's left shoulder with glenoid resurfacing. Thereafter, plaintiff participated in physical therapy. Dr. Basamania has instructed plaintiff to consider a change in occupations and to avoid employment involving the use of his hands above shoulder level.
19. At the time of the Deputy Commissioner hearing, plaintiff continued to treat with Dr. Basamania and had not reached the end of the healing period and remained totally disabled from working.
20. At the hearing before the Deputy Commissioner, Lisa Dixon, defendants' office manager and human resources manager, testified that she first learned of the work related nature of plaintiff's November 13, 2000 shoulder injury in September 2001.
21. Plaintiff's awareness of the procedure for reporting work related injuries is based on his experiences of sustaining a prior back injury in the course of his employment with the defendants. At the time that injury was sustained, plaintiff promptly made an oral report of injury to his supervisor, just as he did after sustaining the subsequent shoulder injury that is the subject of this claim. Defendants admitted liability for the back injury and did not question the plaintiff's manner of reporting.
22. It was reasonable for plaintiff to rely on his past experience of orally reporting a work related injury to defendants and to follow the same procedure in this claim.
23. Defendants received actual notice of the plaintiff's November 13, 2000 shoulder injury on the date it occurred. Defendants have not shown that they were prejudiced by plaintiff's failure to provide written notice of the November 13, 2000 shoulder injury.
24. The parties have submitted an Industrial Commission Form 22 Statement of Days Worked and Earnings of Injured Employee, which reflects an average weekly wage of $376.18, yielding a compensation rate of $250.80.
25. The Full Commission accepts plaintiff's hearing testimony as credible.
26. Having considered all the evidence of record, defense of this claim by defendants was not unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 13, 2000, plaintiff sustained an injury by accident to his left shoulder arising out of and in the course of his employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff was reasonably excused for his failure to provide defendants with written notice of the November 13, 2000 accident within 30 days. Defendants had actual notice of the injury and were not prejudiced by the late written notice and, accordingly, plaintiff is not barred from pursuing his claim. N.C. Gen. Stat. § 97-22.
3. Plaintiff's average weekly wage was $376.18, yielding a compensation rate of $250.80. N.C. Gen. Stat. § 97-2(5).
4. The Commission does not have sufficient medical evidence in the record before it on which to base a decision concerning whether plaintiff's left shoulder condition and surgeries are causally related to the compensable injury by accident and the extent of plaintiff's disability, if any, that resulted from the compensable injury by accident.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
IT IS HEREBY ORDERED that the evidentiary record in this case is REOPENED for the taking of additional medical evidence on the issue of causation and the extent of plaintiff's disability, if any, resulting from the compensable injury by accident. Depositions shall be transcribed and a transcript prepared for review by the Full Commission. The Full Commission retains jurisdiction for the purpose of rendering a decision in the case. Additional evidence shall be completed and submitted to Commissioner Mavretic within 60 days of the date of this Interlocutory Opinion and Award.
Nothing in this Order shall preclude the parties from filing stipulations in this case in lieu of taking further evidence.
This the ___ day of July 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd